## Commonwealth v. Wagoner.

*Boroughs—Shutting off vehicular traffic from streets—Coasting on street—Automobiles—Reckless driving—Act of June 30, 1919.*

1. The burgess and street committee of a borough have the power to close a street not a through route against vehicular traffic for a few hours to permit coasting thereon, and to direct a detour for vehicular traffic.

2. A person who, in driving an automobile, violates such an order and is shown to have endangered the lives and limbs of persons on the street at the time may be convicted under the 19th section of the Act of June 30, 1919, P. L. 678, and this is so although no person was actually injured by him.

3. Coasting upon a public street not in extended use is not an unlawful use thereof, unless prohibited by ordinance.

Appeal from summary conviction. Q. S. Beaver Co., June T., 1926, No. 110.

*William F. Schutte*, private counsel for prosecution, and with him *Ralph K. Smith*, Assistant District Attorney, for Commonwealth.

*Leonard L. Ewing* (of *Martin, Swaney & Ewing*), for defendant.

McConnel, J., Sept. 16, 1926.—This case was an appeal from a proceeding for summary conviction before a justice of the peace under the Motor Vehicles

Commonwealth v. Wagoner.

Act approved June 30, 1919, § 19, P. L. 678, and the amendments thereto, and was heard before the court on July 7, 1926.

The defendant was charged in the information before the justice of the peace with operating a motor-vehicle on the public highways of West Mayfield Borough, Beaver County, Pennsylvania, on Jan. 29, 1926, so as to endanger the life and limb of others using said highway, in violation of section 19 of the act of assembly hereinabove mentioned. A number of witnesses were produced and sworn on the part of the Commonwealth, and the defendant, who was represented by counsel and present in court, offered no testimony, contending that, under the evidence produced by the Commonwealth, the defendant could not be held guilty of a violation of said act of assembly. The testimony as produced before the court showed the following facts:

1. The Borough of West Mayfield is a municipal corporation regulated by the general corporation laws of the Commonwealth of Pennsylvania.

2. Thirty-seventh Street is a public highway in said Borough of West Mayfield, extending east and west with quite a steep grade into the Borough of College Hill, which immediately adjoins the Borough of West Mayfield on the east and is sometimes known as Edward's Hill.

3. The said Thirty-seventh Street is improved by a macadam road about sixteen feet in width and is not put to extended public use in said borough, as the said borough is small and said highway is not a through route.

4. On Jan. 29, 1926, the streets of said borough were icy and said Thirty-seventh Street was being used by a number of people, including the school children of said borough, for coasting.

5. On the afternoon of Jan. 29, 1926, the burgess, under the direction of the street committee of said borough, posted notices upon said street that the same would be closed to vehicular traffic on the evening of said date from 7 o'clock to 9 o'clock, and that all drivers of motor-vehicles would be required to use a detour street known as Harbison's Hill Road.

6. The defendant, Clifford Wagoner, had notice that the said street would be closed to vehicular traffic on said evening so that the same could be used safely by those desiring to coast thereon.

7. The defendant denied the right of the burgess and street committee of the borough to close said street temporarily to vehicular traffic, and told the burgess and chairman of the street committee that he intended to use the street, no matter what happened and would not use the detour.

8. The detour road was in good condition and could have been used by the defendant as conveniently as Thirty-seventh Street.

9. The defendant, after 7 o'clock on the evening of Jan. 29, 1926, and after it had become dark, in spite of the warning of a watchman that had been placed upon the said street, insisted upon and did drive the length of said street, endangering the lives and limbs of those who were coasting thereon, causing great excitement among the coasters and a great uproar, although no one using said street for sled-riding was actually injured.

10. The said street has on it several sharp turns, and neither those sled-riding nor the driver of a motor-vehicle thereon could see the said highway around said curves.

11. The Borough of West Mayfield has no ordinance forbidding coasting upon the highways in said borough.

### Discussion.

Several legal questions are involved in the decision of this case: (1) whether the burgess and street committee of said borough had any authority

to close Thirty-seventh Street temporarily against vehicular traffic; (2) whether coasting or sled-riding upon a public highway in a borough is a legitimate use of such highway, or is a nuisance *per se;* and (3) whether the defendant can be held guilty of a violation of the 19th section of the Act of Assembly approved June 30, 1919, P. L. 678, and the amendments thereto.

### First legal question.

The Borough of West Mayfield is a small borough within the County of Beaver recently incorporated and is governed by the general laws regulating boroughs in this Commonwealth. Under the General Borough Act of 1915, ch. v, art. I, § 2, P. L. 312, it is provided:

"Section 2. The powers of the borough shall be vested in the corporate officers. They shall have power:

"1. To regulate the roads, streets, lanes, alleys, common sewers, public squares, common grounds, footwalks, gutters, culverts and drains and the heights, grades, widths, slopes and forms thereof; and to prohibit the erection or construction of any building or other obstruction to the convenient use of the same."

So that, under this act, the corporate officers of the borough would have the right to regulate the roads and streets in said borough.

Chapter VII, article II, of said act of assembly describes the powers and duties of the burgess, and sections 10 and 11 thereof provide, in part, as follows:

"IV. To exercise the powers and jurisdiction of justices of the peace within the borough for the suppression of riots, tumults and disorderly meetings; and in all criminal cases for the punishment of vagrants and disorderly persons.

"Section 11. It shall be the duty of the burgess:

"1. To preserve order in the borough, to enforce the ordinances and regulations, to hear complaints, to remove nuisances and to exact a faithful performance of the duties of the officers appointed."

So that under this act the general jurisdiction of the streets in a borough is given to the corporate officers, and it seems to be the special duty of the burgess to exercise the powers and jurisdiction of a justice of the peace in the borough, and also to remove nuisances upon said streets.

The power to close streets in boroughs temporarily wherever the closing thereof is necessary is a power which has always been enjoyed by the corporate officers of a borough, and while the general public have an absolute right to the use of a public highway, the borough officers do have authority whenever it is necessary to close a street temporarily, either for a public purpose or when occasion demands for the benefit of a private individual. Thus, in McQuillin on Municipal Corporations, vol. IV, § 1391, it is stated: "At the same time, it must always be remembered that this paramount right of public travel, while it cannot be prohibited, except travel on certain streets while being repaired or during a fire or the like, may be reasonably regulated." See, also, Anderson v. Mayor, etc., 43 Atl. 841, and Augusta v. Reynolds, 69 L. R. A. 564. In volume VI of McQuillan on Municipal Corporations, section 2803, it is also stated: "Moreover, if necessary to prevent accidents, a municipality not only may but it is its duty to close the street to the public by some barrier. So a municipality may block off a portion of a street in its discretion for the comfort and well-being of sick residents therein."

In the case of Burford v. Grand Rapids, 18 N. W. 571, Colley, J., in delivering the opinion in that case, says, *inter alia:*

Commonwealth v. Wagoner.

"It is also true throughout the interior and western states, if not in those bordering on the Atlantic, that in laying out towns streets are dedicated to the public which there may, for many years, be no occasion to improve for travel, and they become for some time mere open spaces for the sports and recreations of those who may see fit to make use of them. It could not be seriously contended that for the municipal authorities to permit coasting upon such a street would be to license a public nuisance. On the contrary, as the sport itself is healthful and exhilarating, it seems eminently proper, if the street is not put to other public use, that this diversion be allowed, if not expressly sanctioned. The sport itself is not entirely foreign to the purposes for which public ways are established; for the use of these ways for pleasure riding is perfectly legitimate, and coasting is only pleasure riding in a series of short trips repeated over the same road, not differing essentially from the riding in sleighs, of which so much is seen on some of the streets of northern cities when suitable weather and proper condition of roads invite to this enjoyment.

"If coasting upon a public highway is not necessarily a nuisance, it would seem plain that the public authorities having the care and superintendence of highways and whose duty it is to prevent nuisances or to abate them must have some discretion to determine when and where the sport should be allowed in the public roads and when and where forbidden."

The power to close a street in a borough temporarily is clearly, then, under our laws, in the corporate officers of the borough. This cannot be done by a general ordinance, as it is only a temporary matter, and the power, if it exists at all, would be exercised by the burgess, and perhaps by the street committee; and if both of them join in the act, as was done in the present case, the act would be one which they were authorized to perform and by which all persons in the borough would be bound. This authority to close streets, or parts thereof, temporarily against vehicular traffic has been exercised in many of the boroughs of this Commonwealth for many years, and is a power which ought to be lodged in the borough officers in order to prevent accidents.

When a street is being repaired it is generally closed by the street committee or the burgess and barriers are erected to prevent the use of said street during the time said repairs are being made. This power is also exercised where persons are seriously ill on the street and quiet must be maintained. It has also been exercised in order to prevent accidents which may be caused, and are caused, by coasting upon the streets in a borough. It is well known that when the streets in boroughs are in condition for sled-riding thereon children, and even older people, will use them for coasting; and if vehicles are permitted to use the same streets, or cross the streets at the time they are being used for coasting, accidents are bound to happen. In order to avoid this difficulty, it is a universal custom in this vicinity at least, and it evidently is in existence in other places, to close certain streets in the borough against vehicular traffic and to compel the coasters to use only a certain street, or a certain part thereof. So that whenever the necessity arises, the burgess or the street committee have the power, and it may be their duty, to close certain of the streets, or parts thereof, temporarily against vehicular traffic and confine the coasting to said streets so as to avoid accidents.

### Second legal question.

In the case of Idell v. Day, 273 Pa. 34, at page 37, Mr. Justice Kephart, in delivering the opinion of the court, says: "Coasting on a public street which

is not put to extended public use and not expressly prohibited by ordinance is not necessarily a nuisance, nor is it an unlawful act or negligence *per se:* Burford *v.* City of Grand Rapids, 53 Mich. 98, 103; Faulkner *v.* City of Aurora, 85 Ind. 130, 133; Lynch *v.* Public Service Corporation, 82 N. J. L. 712; Farrington *v.* Cheponis, 84 Conn. 1, 8; Feldman *v.* Riccordino, 58 Pa. Superior Ct. 114, 117."

This case settles the law in this State, in our opinion, that coasting upon a public street is not an unlawful use of the said highway, and that question, therefore, requires no further discussion on our part.

### Third legal question.

The 19th section of the Act of 1919, P. L. 678, reads as follows: "Section 19. No person shall operate a motor-vehicle on the public highways of the State recklessly or at a rate of speed greater than is reasonable and proper, having regard to the width, traffic and use of the highway, or so as to endanger property or the life or limb of any person. . . ."

There seems to be no ordinance of the Borough of West Mayfield providing for the punishment of any person who may use a street which is temporarily closed by barriers; but the said act of assembly provides that no person shall operate a motor-vehicle upon the public highways of the State so as to endanger property or the life or limb of any person. And the defendant takes the position that, because there was no evidence of any person having been actually injured by reason of his using this street, in spite of the fact that it was closed to motor-vehicle traffic, he cannot be held guilty of a violation of said act of assembly.

The act of assembly does not provide that only in case of an accident shall the driver of a motor-vehicle be punished, but if he uses a highway so as to endanger the life or limb of any person. It was established by the evidence in this case that no motor-vehicle could be driven over this street in the night-time without endangering the life and limb of those who were sled-riding thereon, and it is perfectly clear that this was correct. It was a dark night, the road was narrow, there were two curves on the road around which no person could see, and there were about two hundred persons sled-riding on this street at the time the defendant undertook to drive along it. It was only by good luck that several persons were not injured by reason of the defendant's stubbornness and recklessness, and it seems to us that the part of section 19 hereinabove mentioned directly covers the act of the defendant, even though no person was actually injured, as their lives and limbs were certainly endangered by his act.

### Conclusions of law.

1. The burgess and street committee of the Borough of West Mayfield, Beaver County, Pennsylvania, had the right, under the circumstances of this case, to close Thirty-seventh Street in said borough temporarily against vehicular traffic.

2. Coasting upon a public highway in a borough which is not put to extended public use and not expressly prohibited by ordinance is not necessarily a nuisance, nor is it an unlawful act or negligence *per se.*

3. The Commonwealth, at the instigation of the borough authorities of said Borough of West Mayfield, had the right to proceed against the defendant in this case, under section 19 of the Act of Assembly approved June 30, 1919, P. L. 678, and the amendments thereto.

4. The defendant, Clifford Wagoner, was guilty of violating said section 19 on Jan. 29, 1926.

Commonwealth v. Wagoner.

5. The defendant should be fined the sum of $25 for violating section 19 of said act of assembly.

## Decree.

Now, to wit, Sept. 16, 1926, after due consideration, the court finds from the testimony produced that the defendant, Clifford Wagoner, is guilty as charged in the complaint before Harry Ridings, justice of the peace, and filed in this court, of violating section 19 of the Act of Assembly approved June 30, 1919, P. L. 678, as amended by the act approved June 14, 1923, P. L. 718, by operating a motor-vehicle on Thirty-seventh Street, a public highway in the Borough of West Mayfield, in the County of Beaver, on Jan. 29, 1926, so as to endanger the property or the life or limb of other persons; and he is sentenced to pay a fine of $25 and the costs of this case as taxed by the clerk of this court, and in default of payment of said fine and costs for ten days, it is ordered that the defendant be committed to the Beaver County Jail for a period of five days, or until he is discharged according to law.